ANNA ZAK, PLAINTIFF-RESPONDENT, v. ISABELLA CRAIG, DEFENDANT-APPELLANT.

Decided March 1, 1927.

**Negligence—Injury to Pedestrian on Defective Sidewalk—Defect Caused by Vehicles of Tenants of Defendants, Which Had Subjected the Sidewalk to Uses For Which it was Not Intended—Held, a Nuisance Had Been Created For Which the Defendant Landlord May be Held Accountable.**

On appeal from the Hudson County Circuit Court.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the appellant, *Marshall Van Winkle.*

For the respondent, *Kelsey & Ludwig.*

PER CURIAM.

The defendant below appeals from a judgment entered against her in the Hudson County Circuit Court on the verdict of a jury in favor of the plaintiff, for the sum of $3,000.

The two principal grounds of appeal are: 1. The trial court erroneously refused to order a judgment of nonsuit.

2. The trial court erroneously refused to direct a verdict iu favor of the defendant. These two grounds will be considered together.

On the 20th day of June, 1922, the plaintiff, while walking on a sidewalk, in front of and abutting the premises owned by the defendant, fell and was injured, as a result of a defective condition of the sidewalk. The plaintiff, in her complaint containing two counts, filed in her action against the defendant, to recover damages for injuries sustained by her, resulting from the fall; in the first count, in substance, alleges, that the plaintiff permitted her building, abutted by said sidewalk, to be used as a garage or place for the storage of motor trucks throughout the period intervening between January 25th, 1916, and June 20th, 1922, and negligently and wrongfully, by her servants and agents, drove motor trucks and permitted motor trucks to be driven to and from said building across said sidewalk, until a hole about seven inches in diameter and six inches deep was worn in said sidewalk and the ground beneath the flagstones with which the sidewalk was paved, by the wheels of said motor trucks; that in the night time the plaintiff, while lawfully and carefully walking along the sidewalk, was thrown heavily down and the bones of her foot were fractured, &c.

The second count, after reciting that the building was occupied and used as a garage or place for the storage of motor trucks by individuals and corporations to whom the defendant leased the premises for that purpose, alleges that from said January 25th, 1916, to said June 20th, 1922, the defendant, for her own convenience and that of her lessees, maintained a doorway in the front of said garage to allow said motor trucks ingress and egress from said building and street over the said sidewalk, and that during the period intervening between January 25th, 1916, and June 20th, 1922, the defendant and her lessees, agents and servants drove motor trucks and caused motor trucks to be driven upon and over the sidewalk until a hole seven inches across and about six inches deep was made in said sidewalk and the ground beneath, and that the said hole so created and maintained by

the defendant and her lessees was a public nuisance and a source of great danger to all persons walking upon the said highway, &c.

The three grounds relied on for reversal and argued in the brief of counsel of appellant are as follows: 1. "There was no legal duty on the part of the defendant to keep in repair the sidewalk that had been damaged by plaintiff's brother." 2 "The defendant is not responsible for the acts of Arbuckle & Company." 3. "The defendant is not chargeable with the acts of the American Grocery Company."

The theory upon which the liability of the defendant was submitted to the jury was, the maintenance of a nuisance in the public highway. There was plenary proof that the sidewalk did not become defective and unsafe from the ordinary use thereof by the general public, but it became broken up as the result of a use for which it was not normally designed, namely, the passage of heavy motor trucks over it to and from the defendant's garage, leased to tenants, for the storing of motor trucks, and in which use the flagstones were broken and a hole seven inches in diameter and six inches in depth was made in the sidewalk making it unsafe and dangerous to the public having occasion to use it. The condition of the sidewalk constituted a public nuisance. The only question in the case was whether there was any evidence tending to establish that the defendant caused or maintained the nuisance.

At the time of the happening of the plaintiff's injury the premises were in the occupancy of the Arbuckle company, a subtenant of the American Grocery Company, the original lessee. There was proof to the effect that the defendant leased the premises to the grocery company for garage purposes, for the storing of auto trucks and wagons; that prior to that time, covering a period of many years, there was an ordinary flagstone sidewalk, which, at the time of making the lease to the grocery company, was in a very bad condition, caused by the previous use to which the sidewalk was put, in that horses and wagons were driven over the curb and the sidewalk into the building on the premises, which, prior

to the letting of the premises to the grocery company, had been leased by the defendant to tenants to be used as a stable; that by the lease made by the defendant on January 1st, 1919, to the grocery company the company was authorized by the defendant to lay a cement driveway and to tear up the wooden floor of the building and substitute for it a cement one, at its own expense, but to what extent the company laid the cement driveway was in dispute and, of course, was a jury question. There was also testimony to the effect that the cement driveway, ten feet in width, commenced at the doorway of the garage and extended a distance of eight feet to the sidewalk, and that the remaining space from the end of the cemented work was a flag sidewalk down to the curb. There was testimony from which a jury might have properly found that at the time the lease was made to the grocery company, the sidewalk was in such a dilapidated condition as to constitute a public nuisance, and that this condition arose from the extraordinary use to which the sidewalk had been put by reasons of its use as a driveway for horses and heavy carts and vehicles. The defendant having leased the premises for the use of a stable and as the only ingress to and egress from the stable and street for horses and vehicles could only be accomplished by driving over the sidewalk, and the defendant having rented the premises for the purpose indicated, she became liable to respond in damages to a person injured, if such use of the sidewalk created the nuisance, which caused the injury.

There was also testimony in the case which tended to show that at the time of the expiration of the lease to the grocery company and the renewal thereof, to it, such renewal impliedly arising from the fact that the defendant permitted the grocery company to remain as tenant, the hole in the sidewalk existed and the flagstones were broken and, hence, as this condition constituted a nuisance, and did not have its origin from the ordinary wear and tear of a sidewalk, resulting from a normal use by the public, but, according to the testimony, was created by the extraordinary strain put upon the sidewalk by the tenants of the defendant, who were au-

thorized by her to use the premises for a purpose which caused the sidewalk to be subjected to unusual pressure and strain and for which use the sidewalk was not designed, that is, for motor trucks or other heavy vehicles to be driven over it, the defendant became answerable to respond to the plaintiff in damages for the injuries she sustained.

The motions for a nonsuit and for the direction of a verdict for the defendant were properly refused.

The facts of the instant case fall squarely within those facts which were present in the case of *Davis* v. *Tallon,* 91 *N. J. L.* 618. There the defendants, owners of a lot, leased it to different tenants for storing wagons. The lot was fenced with a gateway to allow wagons ingress and egress to and from the street and lot over the sidewalk, by reason of which use the sidewalk was broken, and through which condition the plaintiff met with her injury. She brought her action against the owners and one Schreiber, a tenant in pessession. Mr. Justice Bergen, speaking for the Court of Errors and Appeals (at *p.* 619), says: "The plaintiff's case was not rested upon any legal obligations of the owner to keep the sidewalk in repair, but on the claim that defendants, by subjecting the sidewalk to a use not intended, that of use by ordinary pedestrians, they created a nuisance which rendered them liable to persons lawfully using it." And, at *p.* 621, the learned justice, *inter alia,* says: "But in addition to this there was testimony from which the jury might have inferred that the lot had been leased to prior tenants for the same purposes, subject to the same use of the sidewalk and that the impairment of it was caused by prior tenants. With a broken condition of the flagstones existing, subject to the inference that the condition was caused by using the sidewalk for the passage of heavy carts from the street to the lot by prior tenants with the knowledge and implied participation therein by the owners, and the testimony of the defendant's driver that the flagstones were not broken by him, the jury might infer that the nuisance was created by the act of former tenants and not by Schreiber, but his exoneration would not

discharge the owners from liability for the acts of the other tenants in which they participated."

The participation was to be inferred from the fact that the premises were leased for a purpose which subjected the use of the sidewalk for the passage of heavy carts from the street to the lot in question. For, at *p.* 620, the learned justice said: "The jury might infer from the evidence that the appellants leased the land and sidewalk for a use not consistent with the purpose for which the walk was constructed; that they had knowledge of the character of the proposed use, and that such use might, and probably would, create a nuisance by obstructing the safe use thereof by pedestrians. These inferences would justify a finding that the condition of the sidewalk, the cause of the accident, was the result of participation, in the creation of the nuisance, either by authorizing it or by making the act of the tenant his own." *Freeholders of Hudson* v. *Woodcliff Land Company,* 74 *N. J. L.* 355.

These cases are controlling.

The judgment is affirmed.